UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | | |
|---|---|---|---|
| WALTER PHILSCOTT ARMSTRONG | ) | | |
| | ) | | |
| *Petitioner,* | ) | Case Nos. | 1:13-cr-113 |
| | ) | | 1:16-cv-69 |
| v. | ) | | |
| | ) | Judge Mattice | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| *Respondent.* | ) | | |
| | ) | | |

## **MEMORANDUM & ORDER**

Before the Court is Walter Philscott Armstrong's [herein "Petitioner"] Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 [herein "§ 2255"]. [Doc. 3].[1] The United States of America [herein the "Government"] filed a timely response in opposition. [Doc. 7]. On October 11, 2018, the Court held an evidentiary hearing on issues raised by Petitioner. [Doc. 22]. Following the hearing, Petitioner and the Government filed post-hearing briefs. [Docs. 25, 26]. The matter is now ripe for review. After reviewing the record, Parties' arguments, and relevant law, the Court finds Petitioner's § 2255 motion lacks merit. Accordingly, it is **DENIED** for the reasons that follow.

**I.  BACKGROUND**

Nearly six years ago, Petitioner was indicted on two counts of possessing with intent to distribute a mixture and substance containing detectable amounts of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). [Doc. 25 at 1].

---

[1]  Unless noted otherwise, all record citations in this order are made to the civil docket, 1:16-cv-69.

Following his arraignment, Petitioner's attorney at the time filed a Motion to Suppress evidence in the case. [*Id.*]. After conducting a hearing on the matter, Magistrate Judge Susan K. Lee recommended the motion be denied. [*Id.*]. Petitioner timely objected. [*Id.*]. Before the Court could rule on the objection, however, Petitioner replaced his counsel with another attorney and soon entered into a plea agreement with the Government. [*Id.* at 2]. As part of his plea bargain, Petitioner waived the right to file a direct appeal of his conviction except to appeal a sentence imposed above the sentencing guideline range or any applicable mandatory minimum sentence. [*Id.*].

As part of his deal, Petitioner moved to withdraw his plea of not guilty as to Count Two of the Indictment and replace it with a guilty plea. [*Id.*]. Magistrate Judge Lee conducted a re-arraignment hearing, and after a plea colloquy, she found Petitioner was "fully capable and competent to enter an informed plea and that the plea was knowingly, voluntarily and freely entered." [*Id.*]. She recommended he be allowed to withdraw his plea and that the Court accept his guilty plea as to Count Two. [*Id.*]. The Court accepted and adopted Magistrate Judge Lee's recommendation. [*Id.*].

The Court's Probation Office soon thereafter prepared a presentence investigation report ["PSR"] and found sufficient evidence to hold Petitioner accountable for possessing a *mixture* and substance containing a detectable amount of methamphetamine in the amount of 224.862 grams total. [Case No. 1:13-cr-113, Doc. 39 PRS, ¶ 26]. The possession amount was based on a substance containing methamphetamine and cash found in Petitioner's possession on two separate occasions. The Probation Office converted the cash into its methamphetamine equivalent. [*Id.*]. Petitioner's Counsel claimed to the Probation Office that $1,500.00 of the cash seized was not drug money, but rather was to be used to purchase a vehicle for his mother. [*Id.*]. The Probation Officer determined even

if true, without the $1,500.00 converted into methamphetamine, Petitioner's base offense level was the same. [*See* Case No. 1:13-cr-113, Doc. 49, Second Revised PSR, ¶ 24]. Later still, the Probation Office received a purity analysis of the methamphetamine found in Petitioner's possession on the two occasions. [*Id.* at 3]. Both amounts were determined to be sufficiently pure to qualify as "actual methamphetamine." [*Id.*]. The Probation Office then recalculated Petitioner's sentence on the basis of *actual* methamphetamine, as opposed to a substance or mixture containing a detectable amount of the drug. [*Id.*].[2] The result found Petitioner with a 27-point base offense level,[3] after he received a 3-point reduction for accepting responsibility for his crime. [*Id.*] This level, coupled with a criminal history category of "V," resulted in a sentencing guideline range of 120 to 150 months. [*Id.*].

After motion practice regarding a potential variance, the Court held a sentencing hearing and sentenced Petitioner to 120-months of incarceration, which was at the bottom of his calculated guideline range. [*Id.* at 4]. One year later Petitioner filed this motion pursuant to § 2255. [*Id.*]. This Court held a hearing regarding an issue raised in his motion, namely whether Petitioner's sentencing attorney disregarded his actual request to file a notice of appeal. [Doc. 22]. At the hearing Petitioner and his sentencing attorney testified under oath. Following the hearing, the Government and Petitioner submitted supplemental, post-hearing briefs. [Docs. 25, 26]. The Court finds the issues have now been thoroughly examined, fully briefed, and ripe for disposition.

---

[2] The Probation Office kept the cash conversion based on a mixture containing methamphetamine because the purity of the equivalent was otherwise indeterminate.

[3] In determining his base level, Petitioner received the benefit of a 2-point reduction due to a 2014 Guideline amendment to the drug quantity table. [Doc. 25].

## II. STANDARD OF REVIEW

### A. 28 U.S.C. § 2255

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence, if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting

factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8(a) requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

### B. Ineffective Assistance of Counsel

In his § 2255 motion, Petitioner raises seven issues,[4] although they can be condensed into five. [*Id.*]. In all of his arguments he asserts that he was deprived of his Sixth Amendment right to counsel at various points during his criminal proceeding. [*Id.*].[5]

---

[4] Petitioner's seven alleged "assignment of errors on behalf of his attorney(s)," as summarized by his habeas attorney, are as follows: (1) "Counsel ... was ineffective in Armstrong's suppression hearing because she had a conflict of interest and breached a duty of loyalty to him after whispering something in the prosecutor's ear and not introducing a preliminary hearing transcript or using it to cross examine the Government's witness;" (2) "Counsel ... was ineffective for failing to object at the sentencing hearing because the Defendant believed he had pled guilty to a mixture and substance of methamphetamine not actual methamphetamine used in the PSR;" (3) "Counsel ... was ineffective for not investigating and failing to object to the revised PSR which altered the way his offense level was calculated from a mixture and substance to actual methamphetamine;" (4) "Counsel ... was ineffective for not filing a notice of appeal after the Defendant mailed him a letter requesting that he file a notice of appeal;" (5) "Counsel ... was ineffective at sentencing for not objecting to the Defendant's criminal history calculation regarding two prior Georgia conviction(s) for 'possessing by ingestion';" (6) "Counsel ... was ineffective for not objecting to the cash conversion because the government did not prove by a preponderance of the evidence that the cash was reasonably related to the Defendant's illegal conduct;" and (7) Counsel ... was ineffective at sentencing for not making it known to the Court that the PSR Addendum indicated that the Defendant's offense level should have been level 25." [Doc. 92 at 5]. In a later response to the Government, Petitioner listed these same seven arguments but in a different order. [*Id.*].

[5] In his plea agreement, Petitioner specifically waived his right to file § 2255 motions with the sole exceptions being "claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment." ECF 1:13-cr-113, Doc. 32, Plea Agreement.

Ineffective assistance of counsel [herein "IAC"] is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). That test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

### III. ANALYSIS

The Court will now turn to the specific arguments Petitioner raises in his § 2255 motion. In sum, (1) he claims his counsel at his suppression hearing was ineffective due to her not introducing certain evidence and because she had a conflict of interest (which he claims was evidenced by her allegedly whispering with a prosecutor during the hearing); (2) he argues that his counsel during the sentencing phase was ineffective because he did not object to the use of actual methamphetamine in calculating his guideline range; (3) he asserts his sentencing counsel was further ineffective because he did not object to the conversion of cash into its methamphetamine equivalent; (4) he avers sentencing counsel was also ineffective for not objecting to the PSR's calculation of his criminal history category; and finally (5) he claims sentencing counsel was ineffective

because he did not file a notice of appeal after Petitioner's request that he do so. [*Id.* at 4–5]. The Court will examine these five issues in turn.

### 1.  IAC - Conflict of Interest and Not Introducing Evidence at Suppression Hearing

Petitioner's first argument is that his attorney at his suppression hearing was ineffective because her representation was adversely affected by a conflict of interest. Conflict of interest allegations fall under the *Strickland*'s IAC analysis. 466 U.S. at 692. Under that standard, a petitioner can meet his burden by demonstrating that his attorney "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 466 U.S. 335, 350 (1980)). If that dual showing is made, "[p]rejudice is presumed." *Id.*

Petitioner offers what he asserts is evidence of a conflict of interest. Put simply, although he does not specify the particulars of the alleged conflict, he claims it is evidenced merely by his attorney whispering to the prosecution during his suppression hearing. [Doc. 3 at 16]. This allegedly occurred during the hearing immediately prior to his attorney proffering evidence to the Court for the record. [*See id.*]. Petitioner admits, "I still do not know what [my attorney] whispered to the prosecution," but nevertheless upon seeing her do so he has since felt that she was working "for the AUSA instead of him." [*Id.*].

Although the Court does not question that Petitioner is sincere in his suspicions, it finds no basis to agree with his wholly unfounded conclusions. There are innumerable legitimate reasons for defense counsel to confer privately with a prosecutor during a hearing. Here, given that the exchange happened just before Petitioner's counsel proffered evidence for the record, it seems likely that she was seeking a stipulation from

the AUSA to have the evidence admitted into the record without an objection. Further, the Court has grave doubts that defense counsel would actively conspire with her adversary at a hearing in the presence of her client and a sworn judicial officer. As such, Petitioner's conflict of interest arguments are far too speculative and conclusory to state a cognizable conflict of interest claim.

As additional evidence that his counsel was biased against him, Petitioner claims that at the hearing she did not ask certain questions of a witness, Detective Jenkins, pertaining to prior statements the witness had made in a related state court proceeding. [Doc. 3 at 16]. This was despite Petitioner providing his attorney a list of questions he wanted her to ask regarding the issue. [*Id.*]. Petitioner further claims this failure prevented a transcript of the state proceeding from being admitted into the hearing's record. [*Id.*]. When these claims are untethered from his conflict of interest arguments, they also fail to support an IAC claim. It is well settled that how and whether an attorney questions a witness is "virtually unchallengeable" if the decision to do so is made after considering the "relevant law and facts." *Moss v. Hofbauer*, 286 F.3d 851, 865 (6th Cir. 2002). Here, Petitioner's attorney informed him that she did not ask Jenkins' questions about his prior statements because she believed his answers were sufficiently consistent with his prior testimony. [*Id.*] She explained that this prevented the questions and transcripts from being used for the limited purpose of impeaching the witness's credibility. [*Id.* at 18]. She further understood this to mean the proffered questions and related state court transcript were inadmissible under the federal rules of evidence. [*Id.*]. In other words, Petitioner's attorney made a tactical decision to avoid a potentially fruitless evidentiary battle and did so on an informed basis. Those sort of informed

"strategic choice[s]," fall well "within the wide range of reasonable professional assistance." *Moss*, 286 F.3d at 865.

Finally, Petitioner invokes the "cumulative errors" doctrine in regards to his counsel's performance at the suppression hearing. However, before invoking that doctrine, a petitioner must first present some "errors to cumulate." *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007). Note, that's "errors"—plural. *Id.* Petitioner has not presented one cognizable error as to his counsel's performance. As a result, his cumulative errors arguments fail. *See, e.g., id.*

To summarize, Petitioner's has not presented sufficient credible evidence of a conflict of interest between his attorney and the Government. He has further failed to state a cognizable IAC claim as to his counsel's performance at his suppression hearing. Accordingly, those claims will be dismissed.

### 2. IAC - Not Objecting to the Use of Actual Methamphetamine in Calculating Sentence

Turning to the next line of argument, Petitioner claims his sentencing attorney was ineffective because he did not object to the use of *actual* methamphetamine in calculating his sentence after Petitioner had only pled guilty to possessing a substance or mixture containing a detectable amount of methamphetamine. [*Id.* at 6]. As a reminder, after Petitioner's indictment and guilty plea to possessing a mixture containing methamphetamine, the Government presented lab results that had determined the methamphetamine found in Petitioner's possession on two occasions was sufficiently pure to legally qualify as actual methamphetamine, as opposed to a mere substance or mixture containing the drug.

When sentencing a defendant, district courts are instructed to consider all relevant facts, including any related criminal conduct. The United States Code further instructs, "[n]o limitation shall be placed on the information concerning the background, character, *conduct* of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (emphasis added). In practice, sentencing courts consider all sorts of information extraneous to the particular crime or crimes for which a defendant is being sentenced for. *See United States v. Watts*, 519 U.S. 148, 152 (1997). That is why, for instance, when the Court sentenced Petitioner it considered the amount and purity of methamphetamine found in his possession on December 3, 2012 despite the United States dropping the indictment for that possession.

Indeed, sentencing courts are even permitted to consider relevant criminal conduct for which a jury has acquitted the defendant. *Watts*, 519 U.S. at 154 ("In short, we are convinced that a sentencing court may consider conduct of which a defendant has been acquitted."). Put simply, courts consider "*all* facts relevant to sentencing" that have been proven by a preponderance of the evidence. *Id.* at 156 (emphasis added). When Petitioner entered into his plea agreement he specifically accepted this fact. *See* Case No. 1:13-cr-113, Doc. 32, Plea Agreement ("The defendant acknowledges that the sentencing determination will be based upon *the entire scope of the defendant's criminal conduct ...*" (emphasis added)). If Petitioner's counsel had objected to using actual methamphetamine in calculating his sentence, the Court would have summarily overruled the objection. Accordingly, no prejudice resulted from counsel not objecting in this regard.

### 3. IAC - Not Objecting to Conversion of Cash into Methamphetamine Equivalent

Next, Petitioner claims his sentencing counsel was ineffective because he did not object to his seized cash being converted into its methamphetamine equivalent for sentencing purposes. The Guidelines' commentary instructs sentencing courts to "approximate the quantity of the controlled substance" a defendant likely possessed when "the amount [actually] seized does not reflect the scale of the offense." U.S.S.G. § 2D1.1, cmt. n.12. The Sixth Circuit has routinely upheld the conversion of seized cash into its drug equivalent, *United States v. Keszthelyi*, 308 F.3d 557, 577 (6th Cir. 2002) (collecting cases), so long as the government "prove[s] by a preponderance of the evidence both the amount of money attributable to drug activity and the conversion ratio—*i.e.*, the price per unit of drugs." *Id.*

As related to this argument, during the sentencing phase Petitioner did specifically argue $1,500.00 of the cash seized from him was unrelated to drug activity and was rather funds he had intended to use to purchase a vehicle for his mother. Although there was no formal objection, this argument was unquestionably presented to the Probation Office, which considered it. *See* Case No. 1:13-cr-113, Doc. 49, Second Revised PSR, ¶ 24 ("Through counsel, Mr. Armstrong advised that $1,500 of the currency which was seized was to be used for the purchase of a vehicle for his mother."). The Probation Officer found the argument was irrelevant because even if the amount were subtracted from the conversion of the cash seized, it had no effect on Petitioner's underlying base offense level. *Id.* ("Even with this subtraction, Mr. Armstrong would remain at a base offense level of 30."). In other words, with or without the $1,500.00, Petitioner's advisory guideline range would have been the same. *See United States v. Russell*, 595 F.3d 633, 647 (6th Cir. 2010)

(upholding a cash conversion where the district court found "[the defendant] would receive the same base offense level" if any more than "37% of the cash" was found to be drug related).

Further, to a related point, in order to increase Petitioner's base level through the means of a cash conversion, the Government only needed to prove 42% or more of the total cash seized was drug related. If the Probation Office had instead converted the cash into its *actual* methamphetamine equivalent, as opposed to a mixture equivalent—which would have likely been proper given the purity of methamphetamine repeatedly found in Petitioner's possession—the percentage of the seized cash necessary to increase Petitioner's base level would have been significantly lower (*i.e.* 4.2% or $246.91 dollars of the total $5,791.00 seized). Of course, doing so would have likely significantly increased Petitioner's guideline range, because if a significant portion of the cash seized was converted into an actual methamphetamine equivalent it may have resulted in a base level of 32 as opposed to the base level 30 Petitioner benefited from.[6] Given this and that the record evidences his counsel did actually (but unsuccessfully) attempt to defeat or reduce the amount of the cash conversion, it was neither "professionally unreasonable" nor prejudicial for Petitioner's attorney to not formally object to the conversion.

### 4. IAC - Not Objecting to Criminal History Category Calculation

In his next argument, Petitioner claims his attorney was ineffective for not objecting to the use of Petitioner's two prior Georgia drug possession convictions in calculating his criminal history category. [Doc. 3 at 23]. He claims those convictions

---

[6] Petitioner's Guideline Range in that situation, after the 3-point reduction for accepting responsibility, would have been 140-175 months. *See* U.S.S.G. (2014), Sentencing Table.

should have been not considered because they were invalid because the alleged conduct leading to those convictions did not fit into the express terms of the relevant statute. [*Id.*]. Even if true, Petitioner's attorney did not act unreasonably by not objecting to the convictions' use in sentencing. The Guidelines instruct that calculating a defendant's criminal history category is not an open invitation for "the defendant ... to attack collaterally a prior conviction or sentence." U.S.S.G. § 4A1.2, cmt. n.6. So long as a conviction has not been reversed, vacated, or invalidated by the relevant authorities, it is properly considered in calculating a defendant's criminal history category. *See id.* If Petitioner's attorney had objected otherwise, it would have been summarily overruled. Accordingly, no prejudice or professionally unreasonable conduct could arise from sentencing counsel not objecting in this regard.

### 5. IAC - Not Filing Notice of Appeal

Finally, Petitioner asserts after he was sentenced he mailed a letter to his sentencing attorney instructing him to file an appeal. Although IAC claims are governed by a standard, there are a few settled legal practices that are regarded so essential to a competent defense that it is *per se* unreasonable if they are not followed. Among those, as is relevant here, is when a criminal defendant requests his attorney file a notice of appeal but that request is not followed. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (1999). "We have long held that a lawyer who disregards *specific instructions* from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* (emphasis added). This is true even if an appeal would be wholly without merit. *See id.*

In the context of a "failure to [] appeal" claim, if the allegations are credible, "[p]rejudice must be presumed," and apparently always. *Ludwig v. United States*, 162 F.3d 456 (6th Cir. 1998). For instance, this presumption of prejudice applies even where,

like here, the petitioner waived most of his appeal rights. *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012). "[E]ven when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal." *Id.*

Given this legal backdrop, the Court found Petitioner's failure to appeal arguments raised a factual question requiring an evidentiary hearing to resolve, and to that end the Court conducted one last October. Both Petitioner and his sentencing attorney testified under oath at the hearing.

### a. Factual Determinations and Legal Application

At the hearing, sentencing counsel asserted that, although he received "numerous" letters from Petitioner, he never received a letter directing him to file an appeal. [Doc. 93 at 3]. He further testified that he was not aware of Petitioner's desire to file an appeal until the instant §2255 motion was filed. [*Id.*]. After learning of Petitioner's allegations therein, sentencing counsel reviewed his case file and was unable to locate the alleged letter directing him to file a notice of appeal. [*Id.*].

When Petitioner testified under oath, he reasserted that after his sentence he mailed his attorney a letter requesting an appeal. [Doc. 92 at 7]. He claims he was prompted to do this after a fellow inmate at the Bradley County Jail told him he had a right to file an appeal despite having waived most of his appeal rights. [*Id.*] Before sending his letter, Petitioner did not make a copy. [*Id.*]. Petitioner says he did not follow up after never receiving a response. [*Id.*]. To Petitioner's credit, he believed his attorney was credible and stated he believed his attorney was telling the truth if he claimed to have never received the letter at issue. [*See id.*].

After observing the witnesses testify, both appeared credible. The Court does find it curious, however, that of all the letters Petitioner allegedly sent to sentencing counsel only the one at issue here was never received. Despite this, the Court has does not find Petitioner's assertions inherently incredible. In any event, it could be the case that both Petitioner and sentencing counsel are testifying truthfully. The two statements are not mutually exclusive, after all. For instance, it could be that Petitioner did in fact draft and send the alleged letter, but it could also be true that counsel just never received it. There were some statements at the hearing that called into question the reliability of Bradley County Jail's internal mailing system. For that matter, it is not as if the United States Postal Service has never lost a letter in transit. In any event, regardless of whether a letter was mailed but nevertheless not delivered, whether Petitioner did in fact send the letter is not necessarily pertinent. The controlling fact, instead, is whether Attorney Masterson was actually directed by Petitioner to file a notice of appeal. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). As to this latter inquiry, the Court finds it is more likely true than not that sentencing counsel never received such a direction. Further, Petitioner has not met his burden by presenting evidence that convinces the Court otherwise. Given these facts, Petitioner's arguments fail due to the reasons that follow.

The "critical" question in a failure to file an appeal case is whether an "actual 'request'" was made. *Ludwig*, 162 F.3d at 459. An "actual request" is one that is actually communicated to an attorney. *Id.* The attorney must have been "*specifically instructed*" to file an appeal. *Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003). In a failure to appeal claim, what constitutes professionally unreasonable conduct, as defined by *Strickland*, is an attorney "disregard[ing]" instructions to file an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). An attorney cannot "disregard[]" a defendant's

unknown desire for an appeal. *Id.* As such, a necessary condition for a failure to file claim is that a defendant must "clearly convey[] his wish[]" to file an appeal. *Id.* Here, the Court finds Petitioner did not convey such a wish to his attorney.

The analysis does not end there, however. Even when a defendant's desire to file an appeal has not been clearly conveyed to an attorney, the attorney can still act professionally unreasonably in certain circumstances if he does not specifically advise his client of his appeal rights. *See id.* This duty to consult arises in two circumstances. The obligation to inform a criminal defendant of his appeal rights, at least in a constitutional sense, is triggered when: (1) a rational defendant would want to appeal, or (2) the particular defendant "reasonably demonstrated that he was interested in appealing." *Spence v. United States*, 68 F. App'x 669, 673 (6th Cir. 2003) (quoting *Flores-Ortega*, 528 U.S. at 480). The Court will briefly explain why neither of these two circumstances apply to these facts.

Here, because Petitioner waived most of his appeal rights, a rational defendant in his position would not desire to file a frivolous appeal. Further, Petitioner admitted he did not develop his desire for an appeal until after he was sentenced, when he would have no longer been in regular contact with his sentencing attorney. Given this, Petitioner likely did not have an opportunity to "reasonably demonstrate[] that he was interested in filing an appeal." *Spence*, 68 F. App'x at 673. Further, Petitioner has not proffered evidence contrary to this, showing he would have had an opportunity to "reasonably demonstrate" his newly formed desire to file an appeal. As such, counsel had no basis to believe it was necessary to advise Petitioner of his appeal rights, or lack thereof.

In sum, Petitioner never successfully communicated a request to file an appeal to his attorney. Further, his attorney had no reason to believe Petitioner would want to file

an appeal, triggering his obligation to advise him of those rights. Due to this, Petitioner has failed to raise an IAC claim as to his failure to appeal argument. Accordingly, it is dismissed.

### B. Certificate of Appealability

Finally, the Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c)(1), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Where a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of Petitioner's claims. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA **SHALL NOT ISSUE**.

## IV. CONCLUSION

For the reasons set forth herein, Petitioner's original § 2255 motion [Doc. 3] will be **DENIED**. The Clerk is **DIRECTED** to terminate the motion as it is filed on the criminal docket [ECF 1:13-cr-113, Doc. 67]. A separate Judgment Order shall enter.

**SO ORDERED** this 6th day of February, 2019.

                                            */s/ Harry S. Mattice, Jr.*
                                            HARRY S. MATTICE, JR.
                                            UNITED STATES DISTRICT JUDGE